Matthew C. Heerde
LAW OFFICE OF MATTHEW C. HEERDE
222 Broadway 19th Floor
New York, NY 10038
Phone: (347) 460-3588
Fax:    (347) 535-3588
mheerde@heerdelaw.com
*Counsel for Plaintiff Shay Rosen*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>Chowaiki & Co. Fine Art Ltd.,<br><br>*Debtor.* | Case No. 17-13228 (MKV)<br>Chapter 7 |
| SHAY ROSEN,<br><br>*Plaintiff,*<br><br>vs.<br><br>CHOWAIKI & CO. FINE ART LTD.,<br><br>*Defendant.* | Adversary Proceeding No. _____ |

**ADVERSARY COMPLAINT FOR DECLARATORY JUDGMENT; IMPOSITION OF CONSTRUCTIVE TRUST; AND TURNOVER OF FUNDS**

Plaintiff SHAY ROSEN, ("**Rosen**" or "**Plaintiff**"), by and through his undersigned attorney, files this *Adversary Complaint for Declaratory Judgment; Imposition of a Constructive Trust; and Turnover of Funds* against defendant CHOWAIKI & CO. FINE ART LTD. ("**Defendant**", "**Debtor**" or "**Gallery**"), and for his complaint ("**Complaint**") against Defendant states as follows:

1

## NATURE OF THE ACTION

1.     This Adversary Proceeding Complaint arises out of pre-petition conduct by the Debtor-Gallery, acting through one of its principals and agents, Ezra Chowaiki ("**Chowaiki**"), that was inequitable and fraudulent, to wit: knowingly and falsely offering Rosen a 1/3 ownership stake in a fictitious joint venture ("**Joint Venture**") to supposedly purchase and then quickly resell for a profit a watercolor and ink painting by the late Russian Expressionist-Abstract painter Wassily Kandinksy, entitled *Schichtenweise,* which Chowaiki told Rosen was dated March 1928 and carried a complete provenance; thereby inducing Rosen to make an international wire transfer for $230,000 ("**Wired Funds**") into the Gallery's City National Bank account (the "**City National Bank Account**") on October 23, 2017, just three weeks before the Gallery filed its petition herein on November 13, 2017.

2.     Although Chowaiki had represented to Rosen that he had a potential buyer "already interested in the picture . . . . willing to pay $1.2m to own it outright[,]" that "someone else is after it . . . . [and so] time is of the essence," and that this was a "short term deal with a quick, but more modest return[,]" Rosen never heard from Chowaiki or the Gallery after transferring the Wired Funds. In fact, the next that Rosen heard of the Debtor and Chowaiki was several weeks later when the third joint purchaser, Christine Barberi, notified Rosen that the Gallery had been shut down, was filing for bankruptcy, and that Chowaiki, as well as the Debtor's majority owner David Dangoor, were being accused of widespread fraud that involved luring investors and collectors into paying hundreds of thousands of dollars for works of art — by renowned artists such as Kandinsky — that neither the Debtor nor either of its principals owned or had the right to sell.

3. The Wired Funds are distinct and traceable in the Debtor's City National Bank Account, as can be seen from the Debtor's Statement of Financial Affairs filed November 27, 2017.

4. Accordingly, because the Wired Funds were transferred to the City National Bank account due to fraud, and constituted no more than a bailment in contemplation of the joint purchase, Rosen seeks, pursuant to New York and bankruptcy law: (a) declaratory judgment finding that the Defendant fraudulently induced the Plaintiff to transfer the Wired Funds to its City National Bank Account; (b) declaratory judgment that the Debtor has no equitable interest or ownership interest in the Wired Funds and that the Wired Funds in their entirety are Rosen's property only; (c) imposition of a constructive trust upon the Wired Funds and their immediate turnover in full.

## PARTIES

5. Plaintiff Rosen is a resident and national of Israel.

6. Defendant Chowaiki & Co. Fine Art, Ltd., a Delaware corporation registered to do business in New York, with its principal place of business in New York, New York, is the debtor in the above-captioned Chapter 7 bankruptcy case.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this Adversary Proceeding under 28 U.S.C. §§ 1334(b) and 2201.

8. This Adversary Proceeding is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (B) and is commenced under Rules 7001(1), (2), and (9) of the Federal Rules of Bankruptcy Procedure.

9. Venue of this Adversary Proceeding is proper in this Court under 28 U.S.C.

§ 1409, in that this Adversary Proceeding arises under, arises in, or is related to a bankruptcy case pending in this District.

## ALLEGATIONS COMMON TO ALL COUNTS

*The Supposed Joint Venture to Purchase the Painting*

10. On or about October 11, 2017, Rosen was introduced to Chowaiki by way of a mutual colleague, Christine Barberi ("**Barberi**"), whom Rosen had known for about 10 years and with whom Rosen had completed other art transactions. Barberi explained to Rosen that Chowaiki was "looking to either sell [the Kandinsky painting] and make a profit or buy it from the current owner and share the investment with a partner and then resell and make a substantial profit." She went on to explain that Chowaiki could "get the work for around $1.2 million and is confident that he can sell it for close to $2 million if he has a bit more time." She also added that "[t]ime is of the essence because [Chowaiki] [was] worried that another dealer w[ould] buy it before he gets the funds together[,]" and that Chowaiki "had bought and sold a lot of Kandinsky works and he is someone you can absolutely trust." She ended by saying that she had known Chowaiki "for many, many years" and that the two had "done a lot of business together and [were] close friends."

11. On the strength of Barberi's introduction, Rosen spoke with Chowaiki about the Joint Venture by phone the following day. Rosen then soon received a follow-up email from Chowaiki, wherein Chowaiki explained why the Kandinsky painting — that he falsely claimed the Joint Venture would acquire — was a particularly good resale investment. Chowaiki initially offered to "sell a half share" in the painting to Rosen for approximately $500,000, and stated that the painting could then be resold "for anywhere between $1.5-2m." He also added that Barberi would "need[ ] to be added on top." Chowaiki and Rosen provisionally agreed on $316,666 for a

4

1/3 share of the deal based on a purchase price of $950,000, but in the subsequent days, the two settled on Rosen contributing a 24% interest with $230,000.

12. On October 23, 2017, Rosen caused the $230,000 Wired Funds to be transferred from his bank account to the Gallery's City National Bank Account in New York, where they have remained since — in their entirety and fully traceable.

*After the Discovery of the Gallery's Fraud, the Gallery Files Bankruptcy*

13. Following his transmittal of the Wired Funds, Rosen did not hear from Chowaiki again. Chowaiki was silent, despite his earlier insistence that time was of the essence to this supposed transaction. And indeed, neither the Kandinsky painting nor the resale buyer ever materialized.

14. On or around November 9, 2017, Barberi contacted Rosen to tell him she had some "terrible news": the Gallery had been shut down, was filing for bankruptcy, and Chowaiki, as well as the Debtor's majority owner David Dangoor, were being accused of widespread fraud that involved luring investors and collectors into paying hundreds of thousands of dollars for works of art — by renowned artists such as Kandinsky — that neither the Debtor nor either of its principals owned or had the right to sell. Subsequent news reports confirmed Barberi's story.[1]

15. Instead of simply selling clients' artwork and taking a commission, Chowaiki used artwork that clients had consigned to the Gallery as collateral for cash advances he then used for personal ends. And in order to service and repay those loans, Chowaiki needed a constant flow of new money from unsuspecting investors like Rosen.

---

[1] On November 16, 2017, Bloomberg reported that a musical instrument dealer was also lured into a deal to jointly purchase the same Kandinsky work. https://www.bloomberg.com/news/articles/2017-11-16/bankrupt-manhattan-art-gallery-accused-of-ripping-off-clients

16. Moreover, Chowaiki had no access to a seller of the Kandinsky painting. His representation to Rosen that he had such access was a lie intended to induce Rosen to transfer the Wired Funds, so that Chowaiki could continue his scheme of loans.

*The Wired Funds Remain Intact and Traceable in the Debtor's Bank Account*

17. Since the deposit of the Wired Funds on October 23, 2017 into the Debtor's City National Bank account, the total balance of the account has always exceeded the $230,000 amount of the Wired Funds.

18. Upon discovery of the fraudulent activity of the Debtor and Chowaki, the Debtor ceased using the City National Bank Account around November 1, 2017, and thus the Wired Funds have never been dissipated, and they remain untouched and fully traceable.

19. The $230,000 Wired Funds are traceable and do not constitute a part of the Debtor's bankruptcy estate. They were obtained from Rosen by fraudulent means and were placed in the Debtor's possession simply as a bailment in order to accomplish the supposed purpose of the Joint Venture, i.e., to jointly acquire the Kandinsky painting to which Chowaiki claimed to have access.

20. The Debtor has no equitable or ownership interest in the Wired Funds, and the Wired Funds are not property of the Debtor's bankruptcy estate. The Wired Funds are the property of Rosen, and Rosen is therefore entitled to their immediate return.

## **COUNT ONE**
(Declaratory Judgment Based On New York Law Regarding Fraud)

21. Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 20 as if fully set forth herein.

22. Under New York law, a plaintiff establishes fraud by clear and convincing evidence of: (a) a misrepresentation by the defendant, (b) that was false and known by the

defendant to be false, (c) made for the purpose of inducing the plaintiff to rely upon it, and (d) upon which the plaintiff rightfully did so rely (e) to his injury. *See, e.g.*, *Lama Holding Co. v. Smith Barney,* 88 N.Y.2d 413, 421 (1996); *Gizzi v. Hall*, 754 N.Y.S.2d 373, 380 (2002).

23. As alleged above, the Gallery, acting through its principal and agent, Ezra Chowaiki, knowingly misrepresented to Rosen that a true and genuine Kandinsky painting entitled *Schichtenweise* existed for sale, and that Rosen could participate in the Joint Venture with Chowaiki to purchase the painting and resell it for a profit.

24. Relying on these and other false claims that Chowaiki made to him, Rosen transmitted the $230,000 Wired Funds to the Gallery's City National Bank Account. However, following his transfer of the Wired Funds, Rosen never heard from Chowaiki again, and neither the Kandinsky painting nor a buyer ever materialized.

25. The Debtor fraudulently represented its access to the Kandinsky painting to induce Rosen to transfer the funds for the purpose of participating in the supposed joint venture, which fraudulent conduct by the Debtor invalidated any supposed joint venture agreement.

26. While the Debtor currently possesses the Wired Funds, it does not have an ownership interest in them, and they are not property of the bankruptcy estate, because the Debtor fraudulently induced Rosen to tansmit the Wired Funds as part of the sham Joint Venture.

27. Rosen has been damaged by the Debtor's fraud in at least the amount of the Wired Funds, and the Debtor is obligated to return the Wired Funds to Rosen immediately.

## COUNT II
(Declaratory Judgment Under § 541(d) of the Bankruptcy Code)

28. Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 27 as if fully set forth herein.

29. Section 541(d) of the Bankruptcy Code provides, in relevant part, as follows:

7

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest … becomes property of the estate under subsection (a)(1) or (2) of this section *only to the extent* of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold. (emphasis added)

30. Applicable state law determines a debtor's interest in property.

31. As alleged above, under New York law the Debtor does not hold any equitable or ownership interest in the Wired Funds, because they were obtained as the result of the fraud perpetrated on Rosen by and through the Debtor's principal and agent, and because Rosen transferred the Wired Funds to the Gallery's City National Bank Account simply as a bailment in order to accomplish the supposed purpose of the Joint Venture. *See, e.g., In re NFN Balgobin,* 490 B.R. 13, 22-24 (Bankr. E.D.N.Y. 2013).

32. The entirety of the Wired Funds are the property of Rosen, only, and they are not property of the Debtor's estate.

## **COUNT III**
(Imposition of a Constructive Trust and Turnover of Funds)

33. Plaintiff restates and incorporates the allegations set forth in paragraphs 1 through 32 as if fully set forth herein.

34. Federal and New York State courts alike will impose a constructive trust against a party that has engaged in inequitable conduct, such as fraud, or where holder of the legal title may not in good conscience retain the beneficial interest therein. Specifically, the elements of a constructive trust are (1) a fiduciary relationship, (2) a promise, (3) a transfer in reliance thereon, and (4) unjust enrichment. *In re Stylesite Mktg., Inc.*, 253 BR 503, 508 (Bankr SDNY 2000); <u>Plumitallo v Hudson Atl. Land Co., LLC,</u> 74 AD3d 1038, 1039–40 (2d Dep't 2010).

35. Here, the plaintiff had a fiduciary relationship with the Debtor by virtue of his status as a partner in the Joint Venture, which was supposed to buy the Kandinsky painting, and toward which the plaintiff contributed the $230,000 Wired Funds that, if not returned to him, will result in the unjust enrichment of the Debtor and its bankruptcy estate.

36. The Wired Funds are fully intact and traceable in the Debtor's City National Bank Account.

37. Rosen is thus entitled to the immediate imposition of constructive trust on the Wired Funds and turnover of same.

## **REQUESTS FOR RELIEF**

WHEREFORE, Plaintiff seeks judgment against the Defendant as follows:

A. As to Count I of this Complaint, Plaintiff prays for declaratory judgment finding that the Defendant fraudulently induced the Plaintiff to transfer the Wired Funds to its City National Bank Account in New York; and

B. As to Count II of this Complaint, Plaintiff prays for declaratory judgment that under § 541(d) of the Bankruptcy Code and applicable New York State law the Defendant has no equitable or ownership interest in the Wired Funds, that the Wired Funds are not part of the Debtor's bankruptcy estate, and that the Wired Funds are Rosen's property; and

C. As to Count III of this Complaint, Plaintiff prays for imposition of a constructive trust on, and the immediate turnover of, the Wired Funds.

Dated: December 12, 2017  　　　　　　　　　LAW OFFICE OF MATTHEW C. HEERDE
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　By: Matthew C. Heerde
　　　　　　　　　　　　　　　　　　　　　　　　　222 Broadway 19th Floor
　　　　　　　　　　　　　　　　　　　　　　　　　New York, New York 10038
　　　　　　　　　　　　　　　　　　　　　　　　　Phone: (347) 460-3588
　　　　　　　　　　　　　　　　　　　　　　　　　Fax:  (347) 535-3588
　　　　　　　　　　　　　　　　　　　　　　　　　Email: mheerde@heerdelaw.com
　　　　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff Shay Rosen*