**Hearing Date: May 10, 2018 at 10:00 a.m. EST**
**Objection Deadline: May 3, 2018 at 4:00 p.m. EST**

TOGUT, SEGAL & SEGAL LLP
*Attorneys for the*
*Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Jacob R. Herz

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X
                                                                 :
In re:                                                           :        Chapter 7 Case
                                                                 :        No. 17-13228 [MKV]
CHOWAIKI & CO. FINE ART LTD.,                                    :
                                                                 :
                                    Debtor.                      :
                                                                 :
---------------------------------------------------------------- X

## MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTION 105(A) AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING SETTLEMENT AGREEMENT

TO THE HONORABLE MARY KAY VYSKOCIL,
UNITED STATES BANKRUPTCY JUDGE:

This application (the "Motion") is made by Albert Togut, not individually, but solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Chowaiki & Co. Fine Art Ltd. (the "Debtor") in the above-captioned case, by and through his attorneys, Togut, Segal & Segal LLP, for entry of an order pursuant to section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement that is set forth in the settlement agreement (the "Settlement Agreement") annexed hereto as Exhibit "A" by and between the Trustee and Joseph Edelman ("Edelman," together with the Trustee the "Parties"). In support of this Motion, the Trustee relies on the Declaration of Neil Berger attached hereto as Exhibit "B" and incorporated by reference. In further support of this Motion, the Trustee respectfully states:

## PRELIMINARY STATEMENT

The Settlement Agreement[1] represents the product of informal discovery and extensive arms-length negotiations between the Parties. If approved by the Court, the Settlement Agreement will: obviate the need to litigate the Parties' competing claims of ownership interests in the Works of Art (defined below); eliminate the need for the Parties to litigate in a foreign jurisdiction concerning possession of the Works of Art; provide the Debtor's estate (the "Estate") with appropriate consideration concerning potential claims relating to the Works of Art; and eliminate substantial claims against the Estate.

For these reasons, and those set forth below, the Trustee, in the exercise of his considered business judgment, has concluded that approval of the Settlement Agreement is in the best interests of the Debtor's Estate. Consequently, the Trustee respectfully requests that the Court approve the Settlement Agreement.

## JURISDICTION

1.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The bases for the relief requested herein are the Bankruptcy Code section 105(a) and Bankruptcy Rule 9019.

---

[1]     Capitalized terms not defined herein shall have the same meaning ascribed to them in the Settlement Agreement.

## FACTS

### Chapter 7 Case

3.      On November 13, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court (the "Court").

4.      On November 14, 2017, Albert Togut was appointed Chapter 7 interim trustee of the Debtor, duly qualified and is acting as Trustee of the Debtor and the Estate.

5.      Prior to the Filing Date, the Debtor operated an art gallery at 500 Park Avenue, Unit 16C, New York, New York.

### The Works of Art

6.      Prior to the Petition Date, on May 16, 2017, the Debtor and Edelman entered into an agreement titled "Consignment Agreement" (the "Consignment Agreement") pursuant to which, among other things, the Debtor received from Edelman three works of art:  (i) *Haus im schnee* by Karl Schmidt-Rottluff (the "Rottluff");  (ii) *Sun God* by Pablo Picasso;  and (iii) *Tete de clown, fond bleu* by Pablo Picasso (collectively, the "Works of Art").

7.      Pursuant to the Consignment Agreement, among other things, the Debtor was (1) entitled to be compensated upon the sale(s) of the Works of Art and (2) Edelman (and not the Debtor) was required to obtain or maintain "wall to wall" insurance for the Works of Art.

8.      Prior to the Petition Date, the Debtor transferred the Works of Art to Galerie Thomas ("Galerie Thomas"), which is located in München, Germany, and

3

subsequently, Galerie Thomas transferred the Rottluff to Brandl Transport GmbH,

located in Cologne, Germany ("Brandl") for storage.

9.      The Parties have made various assertions concerning their

respective claims to the Works of Art, which are in dispute.  The Trustee has asserted

that pursuant to Bankruptcy Code section 544, the Estate's interest in the Works of Art

are superior to interests asserted by Edelman.  Conversely, Edelman has asserted that,

among other things, (i) the Works of Art were improperly transferred by the Debtor to

Galerie Thomas in violation of the Consignment Agreement;  (ii) the Debtor improperly

released the Rottluff to Brandl in violation of the Consignment Agreement;  and

(iii) Edelman terminated the Consignment Agreement prior to the Petition Date, and

thereby terminated the Debtor's interests in the Works of Art.  Edelman has produced

documents in support of his assertions, and the parties have exchanged confidential

position statements pursuant to Rule 408 of the Federal Rules of Evidence (the "FRE").[2]

10.     The Trustee commissioned a lien search of the Debtor which did

not disclose any recorded liens against the Works of Art.

**The Settlement Agreement**

11.     The Parties have executed the Settlement Agreement, subject to

approval of this Court to resolve potential claims that each had to the Works of Art.

12.     The salient terms of the Settlement Agreement are as follows[3]:

    a.  Pursuant to the Settlement Agreement and subject to
        approval of the Court, no later than (5) business days after
        the Effective Date, Edelman or his designated agent(s) shall

---

[2]   The parties settlement communications are protected from disclosure by FRE 408, and information
      contained in them and the Consignment Agreement are also protected from disclosure by
      Bankruptcy Code section 107 and Bankruptcy Rule 9018.

[3]   This summary is not intended to supersede or conflict with the terms of the Settlement Agreement.

deliver $65,000 (the "Settlement Amount") to Wilk Auslander LLP, as counsel for Edelman, which shall (i) hold the Settlement Amount in its IOLA account, and (ii) release the Settlement Amount to the Trustee no later than five (5) business days after the date that the Works of Art have been delivered to Edelman or his designated agent(s).  Settlement Agreement, at ¶ 3.

b.  Not later than five (5) business days after the Effective Date, the Trustee shall notify Galerie Thomas and Brandl in writing that each of them is authorized to release the Works of Art and to deliver them to Edelman or his designated agent(s).  Edelman shall coordinate and pay for all of the costs and expenses of transferring the Works of Art to his custody and control.  Except as expressly set forth in the Settlement Agreement, the Trustee shall not be responsible for any of the coordination, costs or liabilities associated with the transportation and delivery of the Works of Art to Edelman, and neither he nor the Estate shall have any liability or obligation to Edelman or any other party for any claim arising from or in connection with the delivery of the Works of Art to Edelman, or in connection in any way with the condition of the Works of Art.  Settlement Agreement, at ¶ 4.

c.  The Consignment Agreement shall be terminated as of October 30, 2017, and it may not be enforced against any party.  Settlement Agreement, at ¶ 5.

d.  On the Confirmation Date, as contemporaneous consideration for the return of the Works of Art, the Trustee's agreement, including the relinquishment of all claims to the Works of Art in favor of the Debtor and the Estate, and other valuable consideration provided for herein, Edelman, to the extent permitted by law, on behalf of himself, his heirs, representatives and assigns, fully, finally and forever waives, releases and/or discharges the Trustee, his retained professionals in this case, the Debtor, the Debtor's insurers and the Estate from any and all claims, causes of action suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or unasserted, which arise from or otherwise related to the Works of Art and the Consignment Agreement.  Settlement Agreement, at ¶ 8.

e.  Upon his receipt of the Settlement Amount from Wilk Auslander LLP, as contemporaneous consideration for the Settlement Payment and other valuable consideration

provided for herein, the Trustee, to the extent permitted by law, on behalf of himself and his retained professionals in this case, the Debtor, and the Estate, representatives and assigns, finally and forever waives and releases Edelman and his heirs, successors, assigns, affiliates, attorneys, insurers and agents from any and all of the Estate's claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or unasserted, which arise from or otherwise related to the Works of Art and the Consignment Agreement.  Settlement Agreement, at ¶ 9.

## RELIEF REQUESTED

13.	The Trustee seeks entry of an order pursuant to Bankruptcy Code section 105(a) and Bankruptcy Rule 9019 approving the Settlement Agreement.

## BASIS FOR RELIEF

14.	Pursuant to Bankruptcy Rule 9019(a), "the court may approve a compromise or settlement."  Fed. R. Bankr. P. 9019(a).  Further, Bankruptcy Code section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]."

15.	The settlement of disputes is encouraged and generally favored in bankruptcy.  *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("'In administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims[.]'") (quoting *In re Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)).  Indeed, settlements and compromises are "a normal part of the process of reorganization."  *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

6

16.     In deciding whether a particular settlement should be approved, the Court must determine whether it is in the best interests of debtors and their estates. *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005) ("The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the 'best interests of the estate.'") (citation omitted).  The decision to approve a settlement is ultimately within the sound discretion of the bankruptcy court. *See Nellis*, 165 B.R. at 123.  In exercising its discretion, the bankruptcy court must make an independent determination that the settlement is fair and reasonable.  *Id.* at 122.  The court should not, however, substitute its own judgment for that of the trustee.  *See Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984).

17.     To do so, the court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvass the issues to determine whether the settlement falls below the lowest point in the range of reasonableness.  *See Cosoff v. Rodman (In re W.T. Grant and Co.)*, 699 F.2d 599, 607-08 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983);  *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994);  *Adelphia Commc'ns*, 327 B.R. 143 at 159 ("The settlement need not be the best that the debtor could have obtained.  Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted) (quoting *In re Penn Centr. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979)).

18.     To evaluate whether a settlement is fair and equitable, courts in the Second Circuit consider factors including the following:  (a) the balance between the possibility of success in any litigation and the settlement's future benefits;  (b) the likelihood of complex and protracted litigation, with its attendance expense, inconvenience, and delay;  (c) the paramount interests of creditors, including the

7

relative benefits, and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (d) whether other parties in interest support the settlement; (e) the competency and experience of counsel supporting the settlement; and (f) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also In re Ionsosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993).

19. The Settlement Agreement represents a prudent exercise of the Trustee's considered business judgment, and it resolves disputes concerning competing ownership interests in the Works of Art and potential complex and fact intensive claims. Litigation of the parties' competing claims would likely include extensive document productions by, and depositions of, persons in the United States and in Europe, and a contested evidentiary hearing in this Court. Continued litigation might also require litigation in Europe to obtain possession of the Works of Art.

20. Consequently, the Settlement Agreement represents a compromise that will obviate the need for expensive and protracted litigation, and, if approved, will bring valuable consideration into this Estate, enable the consensual release of the Works of Art, and eliminate potential and significant claims against the Estate.

21. For the reasons set forth above, the Trustee submits that the terms of the Settlement Agreement are fair, reasonable and equitable, in the best interests of the Debtor's estate, and lie well above the lowest point in the range of reasonable potential litigation outcomes. Consequently, the Trustee respectfully submits that the Settlement Agreement satisfies Bankruptcy Rule 9019 and respectfully requests that it be approved by the Court.

## NOTICE

22.     Pursuant to Local Bankruptcy Rule 9074-1(b), notice of the attached Order has been given to:  (i) the Debtor;  (ii) the United States Trustee;  (iii) all of the Debtor's known creditors;  and (iv) any party in interest which has filed a Notice of Appearance in this case.

## CONCLUSION

**WHEREFORE**, for the reasons set forth herein the Trustee respectfully requests that the Court enter an order in the form annexed hereto as Exhibit "C" approving the Settlement Agreement and grant such other and further relief as may be just and proper.

Dated:   New York, New York
         April 13, 2018

Respectfully submitted,

ALBERT TOGUT, not individually but solely
in his capacity as Chapter 7 Trustee
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
NEIL BERGER
JACOB R. HERZ
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000