TOGUT, SEGAL & SEGAL LLP
*Attorneys for the*
*Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Jacob R. Herz

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
                                                               :
In re:                                                         :    Chapter 7 Case
                                                               :    No. 17-13228 [MKV]
CHOWAIKI & CO. FINE ART LTD.,                                  :
                                                               :
                               Debtor.                         :
                                                               :
-------------------------------------------------------------- X

## MOTION FOR ORDER PURSUANT TO BANKRUPTCY CODE SECTIONS 105(A), 363(B), 363(F) AND RULE 9019 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE APPROVING SETTLEMENT AGREEMENT

TO THE HONORABLE MARY KAY VYSKOCIL,
UNITED STATES BANKRUPTCY JUDGE:

This application (the "Motion") is made by Albert Togut, not individually, but solely in his capacity as the Chapter 7 Trustee (the "Trustee") of Chowaiki & Co. Fine Art Ltd. (the "Debtor" or "Estate") in the above-captioned case, by and through his attorneys, Togut, Segal & Segal LLP, for entry of an order pursuant to sections 105(a), 363(b) and 363(f) of title 11 of the United States Code (the "Bankruptcy Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving the settlement that is set forth in the settlement agreement (the "Settlement Agreement") annexed hereto as Exhibit "A" by and between the Trustee and Bogomila Welsch-Ovcharov ("BWO," together with the Trustee the "Parties") and the sale contemplated therein. In support of this Motion, the Trustee relies on the Declaration of

Neil Berger attached hereto as Exhibit "B" and incorporated by reference. In further support of this Motion, the Trustee respectfully states:

## PRELIMINARY STATEMENT

The Settlement Agreement[1] is the product of extensive arms-length negotiations between the Parties and their desire to resolve competing claims to the Works of Art (described below) and to monetize Painting 2 (defined below) as part of, and to facilitate, the Parties' Settlement. If approved by the Court, the Settlement Agreement will: (i) obviate the need to litigate the Parties competing ownership interests in the Works of Art; (ii) efficiently facilitate the sale of Painting 2; (iii) provide the Estate with appropriate consideration concerning potential claims to the Works of Art; and (iv) eliminate substantial claims against the Estate.

For these reasons, and those set forth below, the Trustee, in the exercise of his considered business judgment, has concluded that approval of the Settlement Agreement and Sale (defined below) is in the best interests of the Estate. Consequently, the Trustee respectfully requests that the Court approve the Settlement Agreement.

## JURISDICTION

1. This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

2. The bases for the relief requested herein are the Bankruptcy Code sections 105(a) and 363, and Bankruptcy Rule 9019.

---

[1] Capitalized terms not defined herein shall have the same meaning ascribed to them in the Settlement Agreement.

## FACTS

### Chapter 7 Case

3. On November 13, 2017 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in this Court (the "Court").

4. Prior to the Filing Date, the Debtor operated an art gallery at 500 Park Avenue, Unit 16C, New York, New York.

5. On November 14, 2017, Albert Togut was appointed Chapter 7 interim trustee of the Debtor, duly qualified and is acting as Trustee of the Debtor and the Estate.

6. On February 14, 2018, the Court entered the *Order (I) Establishing a Special Bar Date for Art Claims and (II) Approving Form and Manner of Notice Thereof* [Dkt. No. 57], which provided that the deadline to file art claims shall be April 16, 2018 at 5:00 p.m. (prevailing Eastern Time) (the "Art Claims Bar Date").

### The Works of Art

7. On February 21, 2017, the Debtor and BWO entered into an agreement titled "Consignment Agreement" (the "Consignment Agreement") pursuant to which, among other things, the Debtor received four works of art from BWO: (i) *Polder with Moored Boat Near Amsterdam II*, by Piet Mondrian ("Painting 1"); (ii) *Jenny*, by Baart van der Leck ("Painting 2"); (iii) *Kleine Dack Soiree*, by Theo van Doesburg and Kurt Schwitters ("Painting 3"); and (iv) *Broekzijder Mill in the Evening*, by Piet Mondrian ("Painting 4") (collectively, the "Works of Art"). Pursuant to the Consignment Agreement, among other things, the Debtor was entitled to be compensated upon sale(s) of the Works of Art.

3

8. In connection with the Consignment Agreement, BWO was named as the "Loss Payee" under a Certificate of Insurance (the "Certificate of Insurance") issued to her under the Debtor's fine art dealers insurance policy, issued by XL Specialty Insurance Company (the "Insurance Policy").

9. Subsequent to the Petition Date, the Trustee took possession of Painting 1, Painting 2 and Painting 3.

10. Prior to the Art Claims Bar Date, on March 30, 2018, BWO filed proof of claim number 17 ("Claim 17") and asserted a general unsecured claim in the amount of $395,000 and, among other things, sought the return of the Works of Art.

11. Prior to the Petition Date, Clemens Vehmeijer ("Vehmeijer") proposed to purchase Painting 2 for $40,000 US (the "Sale"), which is not inconsistent with the Consignment Agreement, and BWO has consented to the Sale.

12. BWO has asserted allegations and taken certain actions in support of her claims of ownership of the Works of Art, including:

> a. BWO has asserted that she had the right to terminate the Consignment Agreement by giving notice to the Debtor; (b) that she gave such notice in writing prior to the Petition Date; (c) such notice terminated the Consignment Agreement; and (d) that as a result of her termination of the Consignment Agreement, she terminated and extinguished any interests in the Works of Art in favor of the Debtor and its Estate prior to the Petition Date.
>
> b. BWO has asserted that prior to the Petition Date, the Debtor improperly transferred Painting 4 to Dustin Adam Stein aka Stein LLC aka KS Enterprise LLC aka 326 Gallery (together, "Stein"), and BWO commenced an action in the Supreme Court of the State of New York, New York County entitled *Bogomila M. Welsh-Ovcharov v. Dustin Adam Stein and 326 Gallery*, Index No. 657211/2017 to, *inter alia*, (a) direct the delivery of Painting 4 to the Trustee, and (b) recover damages on account of alleged improper transfers of Painting 4 (the "State Court Action");

4

    c. BWO has asserted that the Debtor's transfer of Painting 4 to Stein breached the Consignment Agreement and terminated any interest in favor of the Debtor and the Estate in Painting 4 and the other Works of Art prior to the Petition Date; and

    d. BWO has asserted a claim against the Insurance Policy on account of Painting 4 (the "<u>Insurance Claim</u>").

13. The Trustee has disputed the sufficiency and effect of BWO's asserted termination of the Consignment Agreement.

14. The Trustee is not aware of any liens or encumbrances on the Work of Art, and no party other than BWO has asserted a claim or interest in the Works of Art claimed by BWO.

**<u>The Settlement Agreement</u>**

15. The Parties have executed the Settlement Agreement, subject to approval of this Court, to resolve potential claims that each have asserted regarding the Works of Art.

16. The salient terms of the Settlement Agreement are as follows[2]:

    a. Not later than fourteen (14) business days after the Effective Date, the Trustee and BWO will proceed to close the Sale of Painting 2 for $40,000 to Vehmeijer (the "<u>Sale Date</u>"). The Trustee shall not be liable for any disputes relating to the condition and/or the provenance of Painting 2, *provided, however,* that (a) the Trustee shall have all necessary authority to facilitate the Sale of Painting 2 free and clear of liens, claims, interests and encumbrances, pursuant to the Approval Order; (b) the Trustee makes no representation or warranty of any kind or nature whatsoever to Vehmeijer; regarding Painting 2 and (c) any such representations, if any, shall be deemed to have been made solely by BWO. Settlement Agreement, ¶3.

---

[2] This summary is not intended to supersede or conflict with the terms of the Settlement Agreement.

5

b.  Not later than five (5) business days after the Sale Date, Painting 1 and Painting 3 shall be returned to BWO. BWO shall coordinate and pay for all of the costs and expenses of transferring Painting 1 and Painting 3 to her custody and control. Except as expressly set forth herein, the Trustee shall not be responsible for any of the coordination, costs or liabilities associated with the transportation and delivery of Painting 1 and Painting 3 to BWO, and neither he, his retained professionals nor the Estate shall have any liability or obligation to BWO or any other party for any claim arising from or in connection with the delivery of Painting 1 and Painting 3 to BWO, or in connection in any way with the condition of Painting 1 and Painting 3. Settlement Agreement, ¶4.

c.  The net proceeds of the Sale (after deduction of any applicable taxes of other expenses of sale, other than those set forth in Paragraph 4 hereof) shall be apportioned evenly between the Parties, with each obtaining a 50% share of the net proceeds of the Sale (the "Sale Proceeds"). Settlement Agreement, ¶5.

d.  No later than thirty (30) business days after the Effective Date of the Settlement Agreement, BWO shall amend Claim 17 to reflect this Settlement Agreement and the Sale. Settlement Agreement, ¶6.

e.  On the Effective Date of the Settlement Agreement, the Trustee on behalf of himself and the Estate, assigns to BWO, her successors and assigns, without reservation, all interests, if any, in favor of the Debtor and the Estate in Painting 4, including, without limitation, all claims that have or may be asserted by BWO against Stein or others in the State Court Action or otherwise and all claims asserted by BWO for recovery under the Insurance Policy and/or the Certificate of Insurance issued to BWO under the Insurance Policy. Settlement Agreement, ¶7.

f.  On the Effective Date, the automatic stay contained in Bankruptcy Code section 362 shall be modified to permit BWO to proceed with all claims that have or may be asserted by BWO against Stein or others in the State Court Action or otherwise and all claims asserted by BWO for recovery under the Insurance Policy and/or the Certificate of Insurance issued to BWO under the Insurance Policy, and/or any program of restitution or indemnification sponsored or administered by the United States Attorney or otherwise; provided, however, that any recovery by BWO

6

    under the Insurance Policy may not occur absent entry of a further order of the Bankruptcy Court. Settlement Agreement, ¶8.

g. As contemporaneous consideration for the return of the Works of Art and her receipt of 50% of the net Sale Proceeds, the Trustee's agreement, including the relinquishment of all claims to the Works of Art in favor of the Debtor and the Estate, and other valuable consideration provided in the Settlement Agreement, BWO, to the extent permitted by law, on behalf of herself, her heirs, representatives and assigns, does hereby fully, finally and forever waive, release and discharge the Trustee, his retained professionals in this case, the Debtor, and the Estate from any and all claims, causes of action suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or unasserted, which arise from or otherwise related to the Works of Art and the Consignment Agreement; *provided, however*, that such release does not include, and expressly excludes, the State Court Action and the Insurance Claim. Settlement Agreement, ¶11.

h. Upon his receipt of the Settlement Amount, as contemporaneous consideration for the Settlement Payment and other valuable consideration provided for herein, the Trustee, to the extent permitted by law, on behalf of himself and his retained professionals in this case, the Debtor, and the Estate, representatives and assigns, does hereby fully, finally and forever waive and release BWO and her heirs, successors, assigns, affiliates, attorneys, insurers and agents from any and all of the Estate's claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or unasserted, which arise from or otherwise related to the Works of Art and the Consignment Agreement. Settlement Agreement, ¶12.

### **RELIEF REQUESTED**

17. The Trustee seeks entry of an order pursuant to Bankruptcy Code sections 105(a) and 363 and Bankruptcy Rule 9019 approving the Settlement Agreement and the Sale.

**BASIS OF RELIEF**

18. Pursuant to Bankruptcy Rule 9019(a), "the court may approve a compromise or settlement." Fed. R. Bankr. P. 9019(a). Further, Bankruptcy Code section 105(a) provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions [of the Bankruptcy Code]."

19. The settlement of disputes is encouraged and generally favored in bankruptcy. *See Nellis v. Shugrue*, 165 B.R. 115, 123 (S.D.N.Y. 1994); *see also In re Penn Cent. Transp. Co.*, 596 F.2d 1102 (3d Cir. 1979) ("'In administering reorganization proceedings in an economical and practical manner, it will often be wise to arrange the settlement of claims[.]'") (quoting *In re Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968)). Indeed, settlements and compromises are "a normal part of the process of reorganization." *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson,* 390 U.S. 414, 424 (1968) (quoting *Case v. Los Angeles Lumber Prods. Co.*, 308 U.S. 106, 130 (1939)).

20. In deciding whether a particular settlement should be approved, the Court must determine whether it is in the best interests of the debtors and their estates. *In re Adelphia Commc'ns Corp.*, 327 B.R. 143, 158 (Bankr. S.D.N.Y. 2005) ("The legal standard for determining the propriety of a bankruptcy settlement is whether the settlement is in the 'best interests of the estate.'") (citation omitted). The decision to approve a settlement is ultimately within the sound discretion of the bankruptcy court. *See Nellis*, 165 B.R. at 123. In exercising its discretion, the Bankruptcy Court must make an independent determination that the settlement is fair and reasonable. *Id*. at 122. The Court should not, however, substitute its own judgment for that of the trustee. *See Matter of Carla Leather, Inc.*, 44 B.R. 457, 465 (Bankr. S.D.N.Y. 1984).

8

21. To do so, the Court is not to decide the numerous questions of law or fact raised by litigation, but rather should canvass the issues to determine whether the settlement falls below the lowest point in the range of reasonableness. *See Cosoff v. Rodman (In re W.T. Grant and Co.)*, 699 F.2d 599, 607-08 (2d Cir. 1983), *cert. denied*, 464 U.S. 22 (1983); *In re Ionosphere Clubs, Inc.*, 156 B.R. 414, 426 (S.D.N.Y. 1993), *aff'd*, 17 F.3d 600 (2d Cir. 1994); *Adelphia Commc'ns*, 327 B.R. 143 at 159 ("The settlement need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted) (quoting *In re Penn Centr. Transp. Co.*, 596 F.2d 1102, 1114 (3d Cir. 1979)).

22. To evaluate whether a settlement is fair and equitable, Courts in the Second Circuit consider factors including the following: (a) the balance between the possibility of success in any litigation and the settlement's future benefits; (b) the likelihood of complex and protracted litigation, with its attendance expense, inconvenience, and delay; (c) the paramount interests of the creditors, including the relative benefits, and the degree to which creditors either do not object to or affirmatively support the proposed settlement; (d) whether other parties in interest support the settlement; (e) the competency and experience of counsel supporting the settlement; and (f) the extent to which the settlement is the product of arm's-length bargaining. *See In re Iridium Operating LLC*, 478 F.3d 452, 462 (2d Cir. 2007); *see also In re Ionsosphere Clubs, Inc.*, 156 B.R. 414, 428 (S.D.N.Y. 1993).

23. The settlement and compromises set forth in the Settlement Agreement represents the prudent exercise of the considered business judgment of the Trustee and represent an appropriate means to resolve the Parties' competing claims to the Works of Art. Additionally, the Settlement Agreement will obviate the expense of

9

potential litigation between the Parties, and, if approved, will allow the Trustee to monetize Painting 2 for the benefit of the Estate's creditors.

24. Bankruptcy Code section 363(b) governs transactions outside the ordinary course of business involving property of a debtor's estate and provides, in relevant part, that, "[t]he trustee, after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate . . ." 11 U.S.C. § 363(b).

25. A trustee's sale or use of property of the estate outside the ordinary course of business should be approved by the Court if the trustee can demonstrate a sound business justification for the proposed transaction. *See In re Chrysler LLC*, 576 F.3d 108, 117-18 (2nd Cir. 2009) (citing *In re Iridium Operating LLC*, 478 F.3d 452, 466 (2nd Cir. 2007) ("[I]n this Circuit, the sale of an asset of the estate under section 363(b) is permissible if the judge determining [the] §363(b) application expressly find(s) from the evidence presented before (him or her) at the hearing [that there is] a good business reason to grant such application.'") (citing *Comm. of Equity Sec. Holders The Lionel Corp. in re Lionel Corp.*), 772 F.2d 1063, 1071 (2nd Cir. 1983); *In re Gen. Motors Corp.*, 407 BR 463, 491 (Bankr. S.D.NY. 2009)).

26. Conveyance of Painting 2 to Vehmeijer is in exchange for valuable consideration at a price which is consistent with the Consignment Agreement, and the Parties have agreed that proceeds from the Sale shall be apportioned evenly between the Parties with each obtaining a 50% share of the net proceeds. The Sale of Painting 2 is a fair compromise of competing claims to that Work of Art and will result in a recovery of $20,000 to the Debtor's estates and will eliminate any claim by BWO against the estate on account of Painting 2. Consequently, the Trustee respectfully submits that the Sale represents a proper exercise of the Trustee's considered business judgment.

27. Pursuant to section 363(f) of the Bankruptcy Code, a trustee may sell property under Bankruptcy Code section 363(b) free and clear of liens, claims and encumbrances if one of the following conditions is satisfied: (i) applicable nonbankruptcy law permits the sale of the property free and clear of such interest; (ii) the entity holding the lien, claim or encumbrance consents to the sale; (iii) the interest is a lien and the price at which such property to be sold is greater than the aggregate value of all liens on the property; (iv) the interest is in bona fide dispute; or (v) the entity could be compelled, in a legal or equitable proceeding, to accept a money satisfaction of its interest. 11 U.S.C. § 363(f). *See In re Smart World Tech., LLC*, 423 F.3d 166, 169 n. 3 (2d Cir. 2005) ("Section 363 permits sales of assets free and clear of claims and interests. It thus allows Purchaser … to acquire assets [from a debtor] without any accompanying liabilities."); *In re Dundee Equity Corp.*, No. 89-B-10233, 1992 WL 53743, at *3 (Bankr. S.D.N.Y. Mar. 6, 1992) ("Section 363(f) is in the disjunctive, such that the sale free of the interest concerned may occur if any one of the conditions of § 363(f) have been met").

28. The Trustee has conducted a lien search on Painting 2, which indicated that there are no known liens or encumbrances against Painting 2. As of the date hereof, no party other than BWO has filed a proof of claim in this case asserting a lien or interest in the Works of Art claimed by BWO. Moreover, BWO consents to the sale of Painting 2 pursuant to the provisions of the Settlement Agreement. Consequently, Painting 2 may be conveyed by the Trustee free and clear of all claims, liens, interests, and encumbrances pursuant to Bankruptcy Code section 363, and without any representations or warranties of any kind other than his authority to sell pursuant to this Court's authority.

29. For the reasons set forth above, the Trustee respectfully submits that the terms of the Settlement Agreement are fair and equitable, in the best interests of the Estate, and lie well above the lowest point in the range of reasonable potential litigation outcomes. The Trustee respectfully submits that the Settlement Agreement satisfies Bankruptcy Rule 9019 and requests that it be approved by the Court.

### NOTICE

30. Pursuant to Local Bankruptcy Rule 9074-1(b), notice of the attached Order has been given to: (i) the Debtor; (ii) the United States Trustee; (iii) all of the Debtor's known creditors; and (iv) any party in interest which has filed a Notice of Appearance in this case.

### CONCLUSION

**WHEREFORE**, for the reasons set forth herein the Trustee respectfully requests that the Court enter an order approving the Settlement Agreement and grant such other and further relief as may be just and proper.

Dated: New York, New York
       April 13, 2018

Respectfully submitted,

ALBERT TOGUT, not individually but solely
in his capacity as Chapter 7 Trustee
By His Attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
NEIL BERGER
JACOB R. HERZ
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

12