**Exhibit A**

**<u>Settlement Agreement</u>**

TOGUT, SEGAL & SEGAL LLP
*Attorneys for the*
*Chapter 7 Trustee*
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Neil Berger
Jacob R. Herz

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ X
                                                             :
In re:                                                       :        Chapter 7 Case
                                                             :        No. 17-13228 [MKV]
CHOWAIKI & CO. FINE ART LTD.,                                :
                                                             :
                              Debtor.                        :
                                                             :
------------------------------------------------------------ X

## SETTLEMENT AGREEMENT BY AND BETWEEN
## CHAPTER 7 TRUSTEE AND BOGOMILA WELSH-OVCHAROV

This settlement agreement (the "Settlement Agreement") is entered into

by and between, Albert Togut, not individually but solely in his capacity as Chapter 7

trustee (the "Trustee") of Chowaiki & Co. Fine Art Ltd. (the "Debtor"), and Bogomila

Welsh-Ovcharov ("BWO," together with the Trustee, the "Parties"):

## RECITALS

**WHEREAS**, on November 13, 2017 (the "Petition Date"), the Debtor filed

a voluntary petition for relief under Chapter 7 of the Bankruptcy Code in the United

States Bankruptcy Court for the Southern District of New York (the "Bankruptcy

Court"); and

**WHEREAS**, on November 14, 2017, Albert Togut was appointed Chapter

7 interim trustee of the Debtor, duly qualified, and is acting as Trustee of the Debtor

and its estate (the "Estate"); and

**WHEREAS**, prior to the Petition Date, on February 21, 2017, the Debtor and BWO entered into a agreement titled "Consignment Agreement" (the "Consignment Agreement") pursuant to which, among other things, the Debtor received from BWO four works of art:  (i) *Polder with Moored Boat Near Amsterdam II*, by Piet Monderian ("Painting 1");  (ii) *Jenny*, by Baart van der Leck ("Painting 2"); (iii) *Kleine Dack Soiree*, by Theo van Doesburg and Kurt Schwitters ("Painting 3");  and (iv) *Broekzijder Mill in the Evening*, by Piet Monderian ("Painting 4") (collectively, the "Works of Art");  and

**WHEREAS**, on February 14, 2018, the Court entered the *Order (I) Establishing a Special Bar Date for Art Claims and (II) Approving Form and Manner of Notice Thereof* [Dkt. No. 57], which provided that the deadline to file art claims shall be April 16, 2018 at 5:00 p.m. (prevailing Eastern Time) (the "Art Claims Bar Date");  and

**WHEREAS**, in connection with the Consignment Agreement, BWO was named as the "Loss Payee" under a Certificate of Insurance (the "Certificate of Insurance") issued to her under the Debtor's fine art dealers insurance policy, issued by XL Specialty Insurance Company (the "Insurance Policy");  and

**WHEREAS**, pursuant to the Consignment Agreement, among other things, the Debtor was entitled to be compensated upon sale(s) of the Works of Art; and

**WHEREAS**, BWO asserts that: (a) she had the right to terminate the Consignment Agreement by giving notice to the Debtor, (b) that she gave such notice in writing prior to the Petition Date, and (c) such notice terminated the Consignment Agreement;  and

**WHEREAS**, BWO asserts that as a result of her termination of the Consignment Agreement, she terminated and extinguished any interests in the Works of Art in favor of the Debtor and its Estate prior to the Petition Date;  and

**WHEREAS**, the Trustee has disputed the sufficiency and effect of BWO's asserted termination of the Consignment Agreement;  and

**WHEREAS**, subsequent to the Petition Date, the Trustee took possession of  Painting 1, Painting 2 and Painting 3;  and

**WHEREAS**, BWO asserts that prior to the Petition Date, the Debtor improperly transferred Painting 4 to Dustin Adam Stein aka Stein LLC aka KS Enterprise LLC aka 326 Gallery (together, "Stein"), and BWO commenced an action in the Supreme Court of the State of New York, New York County entitled *Bogomila M. Welsh-Ovcharov v. Dustin Adam Stein and 326 Gallery*, Index No. 657211/2017 to, *inter alia*, (a) direct the delivery of Painting 4 to the Trustee, and (b) recover damages on account of alleged improper transfers of Painting 4 (the "State Court Action");  and

**WHEREAS**, BWO also asserts that the Debtor's transfer of Painting 4 to Stein breached the Consignment Agreement and terminated any interest in favor of the Debtor and the Estate in Painting 4 prior to the Petition Date;  and

**WHEREAS**, BWO has asserted a claim against the Insurance Policy on account of Painting 4 (the "Insurance Claim");  and

**WHEREAS**, prior to the Art Claims Bar Date, on March 30, 2018, BWO filed proof of claim number 17 ("Claim 17") asserting a general unsecured claim in the amount of $395,000 and, among other things, sought the return of the Works of Art; and

**WHEREAS**, prior to the Petition Date, Clemens Vehmeijer ("<u>Vehmeijer</u>") proposed to purchase Painting 2 for $40,000 US (the "<u>Sale</u>"), which is not inconsistent with the Consignment Agreement, and BWO has consented to the Sale;  and

**WHEREAS**, this Settlement Agreement is based on the Parties' desire to avoid the costs, risks and uncertainty of litigation in the Bankruptcy Court and other courts, and to monetize Painting 2 pursuant to a sale approved by the Bankruptcy Court;  and

**WHEREAS**, the Trustee is not aware of any liens or encumbrances on the Work of Art;  and

**WHEREAS**, the Trustee has concluded that this Settlement Agreement and Sale are in the best interests of the Estate and is an appropriate means of resolving the Parties' competing claims to the Works of Art and facilitate the Sale of Painting 2; and

**NOW, THEREFORE,** without any admission of liability or of any issue of fact or law, subject to approval of this Settlement Agreement and Sale by the Bankruptcy Court, and upon the consent and agreement between the Parties, it is hereby stipulated and agreed to by the Parties:

1.      **Incorporation**.  The recitals set forth above are incorporated herein by reference.

2.      **Bankruptcy Court Approval**.

a.      This Settlement Agreement shall become effective upon the date that  an order of the Bankruptcy Court approving the terms of this Settlement Agreement (the "<u>Approval Order</u>") becomes final and not subject to an appeal or request for a stay (the "<u>Effective Date</u>").

b.      The Trustee will promptly file a motion with the Bankruptcy
Court for entry of the Approval Order pursuant to sections 105(a) and 363 of the
Bankruptcy Code and Bankruptcy Rule 9019 (the "9019 Motion") approving this
Settlement Agreement and the sale of Painting 2 to Vehmeijer.

c.      The Trustee shall seek authority to redact consignment terms,
prices and other market sensitive information about the Works of Art (but not the
proposed price to be paid by Vehmeijer under the Sale) and any financial or account
information of BWO (collectively, "Sensitive Information") that he may file in
connection with the 9019 Motion and Sale pursuant to Bankruptcy Code 107(b) and
Bankruptcy Rule 9018, and shall notify BWO within one (1) business day of receipt of
any grant or denial of such authority.  Each Party to this Settlement Agreement agrees
that to the extent there is any opposition to the 9019 Motion, the Parties will jointly
support entry of an order approving this Settlement Agreement and will cooperate to
achieve approval and to maintain the confidentiality of Sensitive Information.

d.      Between the date that the Parties sign the Settlement
Agreement and the Effective Date, the Parties agree that they are bound by the
Settlement Agreement, upon its approval by the Bankruptcy Court, and that they shall
thereafter make no claim before the Bankruptcy Court that is  contrary to the terms set
forth herein.

3.      **Sale of Painting 2**.  Not later than fourteen (14) business days after
the Effective Date, the Trustee and BWO shall proceed to close the Sale (the "Sale Date").
The Trustee shall not be liable for any disputes relating to the condition and/or the
provenance of Painting 2, *provided, however,* (a) that the Trustee shall have all necessary
authority to facilitate the Sale of Painting 2 free and clear of liens, claims, interests and
encumbrances, pursuant to the Approval Order; (b) that the Trustee makes no

representation or warranty of any kind or nature whatsoever to Vehmeijer; and (c) that
any such representations, if any, shall be deemed to have been made solely by BWO.

4.      **Return of Art**.  Not later than five (5) business days after the Sale
Date, Painting 1 and Painting 3 shall be returned to BWO.  BWO shall coordinate and
pay for all of the costs and expenses of transferring Painting 1 and Painting 3 to her
custody and control.  Except as expressly set forth herein, the Trustee shall not be
responsible for any of the coordination, costs or liabilities associated with the
transportation and delivery of Painting 1 and Painting 3 to BWO, and neither he, his
retained professionals nor the Estate shall have any liability or obligation to BWO or
any other party for any claim arising from or in connection with the delivery of Painting
1 and Painting 3 to BWO, or in connection in any way with the condition of Painting 1
and Painting 3.

5.      **Sale Proceeds**.  The net proceeds from the Sale (after deduction of
any applicable taxes of other expenses of sale, other than those set forth in Paragraph 4
hereof) shall be apportioned evenly between the Parties, with each obtaining a 50%
share of the net proceeds of the Sale (the "Sale Proceeds"), and the Trustee shall deliver
BWO's share of the Sale Proceeds to her in US Dollars within ten (10) business days
after his receipt of payment in full for the Sale.

6.      **Claim 17**.  No later than thirty (30) business days after the Effective
Date, BWO shall amend Claim 17 to reflect this Settlement Agreement and the Sale.

7.      **The Stein Litigation.**  On the Effective Date, the Trustee on behalf
of himself and the Estate, assigns to BWO, her successors and assigns, without
reservation, all interests, if any, in favor of the Debtor and the Estate in Painting 4,
including, without limitation, all claims that have or may be asserted by BWO against
Stein or others in the State Court Action or otherwise and all claims asserted by BWO

for recovery under the Insurance Policy and/or the Certificate of Insurance issued to

BWO under the Insurance Policy, and/or any program of restitution or indemnification

sponsored or administered by the United States Attorney or otherwise; provided,

however, that any recovery by BWO under the Insurance Policy may not occur absent

entry of a further order of the Bankruptcy Court.

8. **Modification of Automatic Stay.** On the Effective Date, the

automatic stay in the Debtor's Chapter 7 case shall be modified to permit BWO, her

successors and assigns, to pursue recovery of Painting 4 and any other relief regarding

Painting 4 including, without limitation, continuation of the State Court Action and

recovery under the Insurance Policy and/or the Certificate of Insurance issued to BWO

under the Insurance Policy.. Any recovery by BWO in the State Court Action, and/or

the Insurance Policy and/or the Certificate of Insurance issued to BWO under the

Insurance Policy shall be free and clear of all claims, liens and encumbrances in favor of

the Trustee the estate and the Debtor's creditors.

9. **Contingency if Motion Denied**. If the Bankruptcy Court does not

approve this Settlement Agreement, it shall be null and void and both inoperative and

inadmissible for any and all purposes in relation to any litigation commenced in the

Bankruptcy Court or otherwise.

10. **Termination of the Agreement**. On the Effective Date, the

Consignment Agreement shall be terminated as to the Debtor, and it may not be

enforced by the Trustee against BWO.

11. **BWO's Release**. On the Confirmation Date, as contemporaneous

consideration for the return of the Works of Art and her receipt of 50% of the net Sale

Proceeds, the Trustee's agreement, including the relinquishment of all claims to the

Works of Art in favor of the Debtor and the Estate, and other valuable consideration

provided for herein, BWO, to the extent permitted by law, on behalf of herself, her heirs, representatives and assigns, does hereby fully, finally and forever waive, release and discharge the Trustee, his retained professionals in this case, the Debtor, and the Estate from any and all claims, causes of action suits, debts, obligations, liabilities, accounts, damages, defenses, or demands whatsoever, known or unknown, asserted or unasserted, which arise from or otherwise related to the Works of Art and the Consignment Agreement; *provided, however*, that such release does not include, and expressly excludes, the State Court Action and the Insurance Claim.

12.    **Trustee's Release.**  Upon his receipt of the Settlement Amount, as contemporaneous consideration for the Settlement Payment and other valuable consideration provided for herein, the Trustee, to the extent permitted by law, on behalf of himself and his retained professionals in this case, the Debtor, and the Estate, representatives and assigns, does hereby fully, finally and forever waive and release BWO and her heirs, successors, assigns, affiliates, attorneys, insurers and agents from any and all of the Estate's claims, causes of action, suits, debts, obligations, liabilities, accounts, damages, demand rights, titles, defenses, or demands whatsoever, known or unknown, asserted or unasserted, which arise from or otherwise related to the Works of Art and the Consignment Agreement.

13.    **Entire Agreement.**  This Settlement Agreement constitutes the entire agreement and understanding of the Parties regarding the Settlement Agreement, the Consignment Agreement and the subject matter thereof and can only be modified by a writing signed by the Parties and approved by the Bankruptcy Court.

14.    **Successors and Assigns.**  This Settlement Agreement shall be binding upon the Parties hereto and their respective successors and/or assigns.

15.    **No Admission of Liability.**  The Parties hereto understand and agree that neither the making of this Settlement Agreement nor anything contained herein shall be construed or considered in any way to be an admission of guilt, wrongdoing, liability, or noncompliance with federal, state or local law, statute, order or regulation, tortious act, breach of contract, violation of common law, or any other wrongdoing whatsoever; nor shall it be construed or considered in any way to be an admission with respect to any issue of fact or law in any proceedings before the Bankruptcy Court, in the State Court Action, or in any other proceeding.

16.    **Rule 408 Communication.**  No statement made or action taken in connection with the negotiation of this Settlement Agreement shall be offered or received in evidence or in any way referred to in any legal action among or between the Parties, other than as may be necessary to obtain approval of and enforce this Settlement Agreement or any dispute hereunder.

17.    **Construction.**  This Settlement Agreement shall be construed without regard to any presumption or other rule requiring construction against the party causing the document to be drafted.  Each Party warrants that it has been represented and advised by counsel or has had full opportunity to be represented and advised by counsel with respect to this Settlement Agreement and all matters covered by it.

18.    **Facsimile Signature.**  This Settlement Agreement may be executed in multiple counterparts, each of which shall be deemed an original and evidence of this Settlement Agreement may be exchanged by fax or by electronic transmission of a scanned copy of the signature pages or by exchange of originally signed documents, each of which shall be as fully binding on the party as a signed original.

19.   **Authority.**  Each person who executes this Settlement Agreement represents that he or she is duly authorized to execute this Settlement Agreement.  The Trustee represents that he is authorized to enter into this Settlement Agreement and that he and the Debtor will be bound thereby, subject to the Bankruptcy Court's approval.

20.   **Jurisdiction.**  The Parties hereby irrevocably and unconditionally agree that the Bankruptcy Court shall retain exclusive jurisdiction to interpret, implement, and enforce the provisions of this Settlement Agreement pursuant to the laws of the State of New York.

**ACKNOWLEDGED AND AGREED TO BY:**

Dated:  April 13, 2018
      New York, New York

BOGOMILA WELSH-OVCHAROV
Individually

*/s/ Bogomila Welsh-Ovcharov*
BOGOMILA WELSH-OVCHAROV

DR. BOGOMILA WELSH-OVCHAROV
By Her Attorneys, Brunelle & Hadjikow, P.C.

*/s/ George Brunelle*
George Brunelle
39 Broadway, Suite 3300
New York, New York 10006
(212) 809-9100

Dated:  April 13, 2018
      New York, New York

ALBERT TOGUT,
    Not Individually But Solely in His
    Capacity as Chapter 7 Trustee,
By his attorneys,

*/s/ Neil Berger*
TOGUT, SEGAL & SEGAL LLP
Neil Berger
Jacob R. Herz
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000

**IT IS SO ORDERED**
on this ___ day of _____, 2018
New York, New York

_____
MARY KAY VYSKOCIL
United States Bankruptcy Judge